[Cite as *State v. Hill*, 2021-Ohio-388.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| PARIS HILL | : | Case No. 20 CAA 01 0003 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
Pleas, Case No. 19 CRI 04 0264


JUDGMENT:          Affirmed


DATE OF JUDGMENT:          February 10, 2021


APPEARANCES:

For Plaintiff-Appellee

MELISSA SCHIFFEL
R. JOSEPH VARVEL
145 North Union Street
Delaware, OH  43015

For Defendant-Appellant

WILLIAM T. CRAMER
470 Olde Worthington Road
Suite 200
Westerville, OH  43082

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, Paris Hill, appeals his January 7, 2020 convictions in the Court of Common Pleas of Delaware County, Ohio.  Plaintiff-Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   On April 17, 2019, the Delaware County Grand Jury indicted appellant on two counts of aggravated burglary in violation of R.C. 2911.11(A)(1) and (2) (physical harm and deadly weapon), both with firearm specifications pursuant to R.C. 2941.145, one count of menacing by stalking in violation of R.C. 2903.211, and one count of assault in violation of R.C. 2903.13.  Said charges arose from an incident involving appellant and his ex-girlfriend, K.C.

{¶ 3}   A jury trial commenced on October 29, 2019.  The jury found appellant guilty as charged.  By judgment entry filed January 7, 2020, the trial court merged the two burglary counts and the two firearm specifications, and the state elected to proceed to sentencing on the second burglary count (deadly weapon).  The trial court sentenced appellant to an aggregate term of ten to fifteen years in prison, plus a three year mandatory sentence for the firearm specification.

{¶ 4}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 5} "APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED BY A CONVICTION FOR AGGRAVATED BURGLARY BASED ON A DEADLY WEAPON AND THE IMPOSITION OF FIREARM SPECIFICATIONS ON BOTH AGGRAVATED

BURGLARY COUNTS WHERE THERE WAS INSUFFICIENT EVIDENCE THAT APPELLANT HAD A FIREARM WITHIN HIS IMMEDIATE PHYSICAL REACH WHEN HE COMMITTED THE BURGLARY."

II

{¶ 6} "APPELLANT'S CONVICTION FOR AGGRAVATED BURGLARY BASED ON A DEADLY WEAPON AND THE FIREARM SPECIFICATIONS ATTACHED TO BOTH AGGRAVATED BURGLARY COUNTS WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE WHERE THERE WAS NO EVIDENCE THAT APPELLANT HAD A FIREARM WITHIN HIS IMMEDIATE PHYSICAL REACH WHEN HE COMMITTED THE BURGLARY."

III

{¶ 7} "APPELLANT'S DUE PROCESS RIGHT TO A FAIR TRIAL WAS DENIED WHEN THE TRIAL COURT MISLED THE JURY BY FAILING TO PROPERLY ADDRESS A JURY QUESTION DURING DELIBERATIONS."

IV

{¶ 8} "APPELLANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY COUNSEL'S FAILURE TO OBJECT TO THE TRIAL COURT'S MISLEADING RESPONSE TO THE JURY QUESTION REGARDING THE LOCATION OF THE GUN."

I, II

{¶ 9} In his first and second assignments of error, appellant claims his convictions for aggravated burglary with a deadly weapon and the firearm specification were against the sufficiency and manifest weight of the evidence.  We disagree.

{¶ 10} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 11} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 12} Appellant challenges the finding that he had a firearm within his immediate physical reach when he committed the burglary.

{¶ 13} Appellant was found guilty of aggravated burglary in violation of R.C. 2911.11(A)(2) and a firearm specification pursuant to R.C. 2941.145 which state the following, respectively:

[R.C. 2911.11(A)(2)] No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

[R.C. 2941.145] Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.

{¶ 14} R.C. 2923.11(A) and (B) define "deadly weapon" and "firearm" as follows:

(A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.  "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

{¶ 15} In *State v. Thompkins,* 78 Ohio St.3d 380, paragraph one of the syllabus, 678 N.E.2d 541 (1997), the Supreme Court of Ohio held the following:

A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence.  In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

{¶ 16} Circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts."  *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352

(1972), paragraph five of the syllabus.  It is to be given the same weight and deference as direct evidence.  *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 17} In *State v. Green,* 117 Ohio App.3d 644, 648, 691 N.E.2d 316 (1st Dist.1996), the defendant was convicted of aggravated robbery after he robbed a bank and threatened, " 'Don't move or I'll blow your brains out.' "  No one in the bank observed a firearm on the defendant's person.  The defendant "made several threats to 'blow the heads off' the victims, with his hand or hands either concealed or used in a manner consistent with having a concealed gun, and * * * was able to compel the surrender of the money based upon his actions and the victims' suspicions that he was armed and could carry out his threat."  *Id.* at 651.  The *Green* court found these facts were sufficient to establish the element of "deadly weapon."  In discussing "that evidence to prove a firearm specification involves evidence in addition to that required to establish aggravated robbery," the *Green* court noted Chief Justice Moyer's concurring opinion in *State v. Murphy,* 49 Ohio St.3d 206, 551 N.E.2d 932 (1990), wherein he stated, "where a person uses a gun and accompanying threats indicating that the gun can cause harm for the purpose of causing another to perform an act, that person cannot be 'entitled to a conclusion as a matter of law that his words mean nothing.' "  *Green* at 651, quoting *Murphy* at 210.  The *Green* court reasoned the following at 651-652:

> Likewise, one who indicates by word and conduct that he has a gun
> in his possession should not be entitled as a matter of law to the
> conclusion that such words and conduct have no meaning.  We cannot

perceive why the proof of possession of a deadly weapon should require from a victim any more exact scrutiny of the actions of a perpetrator than that required to prove the operability of a weapon under the firearm specification.  If a totality-of-the-circumstances test can be used to infer the operability of a gun, the same test would seem applicable to the actual possession of a deadly weapon in the commission of a robbery.

{¶ 18} In *State v. Jeffers,* 143 Ohio App.3d 91, 93, 757 N.E.2d 417 (1st Dist.2001), the defendant was convicted of robbery with a firearm specification after he robbed a convenience store and told the victim, " 'No, ma'am, if you don't hurry up, I'm going to blow your head off.' "  The victim saw that one of the defendant's hands was in his pocket, holding what she believed to be a gun.  The *Jeffers* court noted, "we have repeatedly held that a victim's belief that the weapon is a gun, together with the intent on the part of the accused to create and use that belief for his own criminal purposes, is sufficient to prove a firearm specification." (Footnote omitted.)   *Id.* at 95.   The *Jeffers* court then concluded the following:

In the instant case, the state provided sufficient evidence to prove the specification.  The testimony indicated that Jeffers threatened to "blow [Atkinson's] head off" if she refused to give him the money.  Jeffers further indicated that he possessed a firearm by the manner in which he concealed his hand in his pocket.  Jeffers also used Atkinson's belief that he had a gun to effectuate his criminal purpose.  Although Atkinson did not

see a weapon and no weapon was recovered from Jeffers or his residence, the jury could have properly relied on circumstantial evidence in finding Jeffers guilty of the specification. The conviction was therefore based upon sufficient evidence and was not contrary to the manifest weight of the evidence.

{¶ 19} In *State v. Haskins,* 6th Dist. Erie No. E-01-016, 2003-Ohio-70, ¶ 3, the defendant was convicted of aggravated robbery with a firearm specification after he robbed a gas station and told the victim, " 'Are you going to give me the money or do I have to pull this pistol out of my pocket?' " The victim "did not see a gun, but immediately raised her hands." *Id.* The *Haskins* court discussed the *Murphy* and *Thompkins* cases cited above, and concluded the following at ¶ 47-48:

In this case, appellant indicated that he would use the "pistol in my pocket" if the attendant did not give him the cash drawer money. Although no firearm was actually visible to the victim or found, the effect on the hearer was that appellant had a firearm and threatened to use it. Thus, we conclude that appellant's explicit threat, when construed most strongly in favor of the state, provides sufficient evidence from which any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

We further conclude that, although not visible, the threat of the use of a firearm is, under *Thompkins,* enough for a jury to find that appellant

did, in fact, have an operable firearm.  Therefore, we conclude that sufficient evidence was presented to sustain the conviction for the R.C. 2941.145 firearm specification and the verdict was not against the manifest weight of the evidence.

{¶ 20} On April 7, 2019, appellant banged on and then kicked in the door to K.C.'s apartment.  T. at 155, 170-171, 183-184.  While kicking in the door, appellant stated, " '[o]pen the door, or I'm going to start shooting.' "  T. at 172, 241.  K.C. was screaming because she was scared.  T. at 181.  Appellant entered the apartment, pushed K.C. up against the wall, yelled at her, and struck her.  T. at 168, 171-172, 195, 201.  K.C. did not see appellant with a gun during this incident.  T. at 240.

{¶ 21} J.M., K.C.'s upstairs neighbor, testified to hearing a male voice yelling.  T. at 249.  She recorded the incident.  T. at 250; State's Exhibit 4.  She heard the male voice say " 'I'm going to shoot.' "  T. at 258.  She did not go downstairs to confront the person who was threatening to shoot because "I was scared I would be next."  *Id.*

{¶ 22} During the incident, appellant gave an immediate explicit threat to shoot K.C. if she did not open the door he was banging on.  "Shooting" implies the use of and therefore the possession of a firearm.  Although K.C. did not see a "hand in the pocket" to indicate the possession of a gun because appellant was on the other side of her door busting it down and coming after her, K.C. had no reason to disbelieve that appellant in fact possessed a gun at that moment as she had observed him with a gun on prior occasions.  T. at 165-167, 206-207, 211-213, 242.  This case is similar to the *Haskins* case wherein a  gun or the appearance of a gun was not observed, but the "effect on

the hearer was that appellant had a firearm and threatened to use it." Appellant's own words of an immediate explicit threat to start shooting, when construed most strongly in the state's favor, supports a reasonable inference that he possessed a firearm at the time he was kicking in K.C.'s door and "provides sufficient evidence from which any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Haskins, supra*.

{¶ 23} Upon review, we find sufficient evidence was presented, if believed, for the jury to find beyond a reasonable doubt that appellant was in possession of a firearm at the time of the incident. We do not find any manifest miscarriage of justice.

{¶ 24} Assignments of Error I and II are denied.

### III, IV

{¶ 25} In his third and fourth assignments of error, appellant claims the trial court misled the jury by failing to properly address a jury question during deliberations, and his counsel was ineffective for failing to object to the trial court's misleading response to the jury question. We disagree.

{¶ 26} As stated by this court in *State v. Carter,* 5th Dist. Coshocton No. 02 CA 028, 2004-Ohio-39, ¶ 48:

When a jury requests further instruction, or clarification of instructions previously given, a trial court may exercise its discretion in determining the appropriate response. *State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965. A trial court response directing the jury to the jury (sic) to reread written instructions that clearly and comprehensively

answer the question, instead of giving further oral instructions, is appropriate and within the scope of the court's discretion.  See *State v. Lindsey* (2000), 87 Ohio St.3d 479, 488, 721 N.E.2d 995.

{¶ 27} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 28} The jury asked three questions.  Two were addressed on the record. There is no mention of the third question on the record, but it is included in the file.  It is this third question that appellant challenges: "Define immediate physical reach?  If the gun is in the car, does that constitute immediate physical reach and accessible?"

{¶ 29} Appellant states the trial court consulted the parties and then "referred the jury back to the original instructions, without providing any further guidance." Appellant's Brief at 14.  Appellant argues "a firearm in a car in the parking lot is not within the immediate physical reach of a defendant in an apartment" and in "failing to properly instruct the jury on this point, the trial court misled the jury and allowed them to erroneously find Hill guilty of aggravated burglary and the firearm specifications based on a firearm that was left in a car in the parking lot."  *Id.*

{¶ 30} Whether the firearm was in the car or on appellant's person was an issue for the jury to decide.  The words "immediate physical reach" do not constitute a legal phrase requiring a specific instruction.  The phrase is made up of plain language and the jury members could rely on their own understanding of the words.  Instead of fashioning a definition for the phrase and possibly misleading the jury, the trial court

referred the jury to the original instructions.  We do not find that the trial court abused its discretion in how it handled the question.

{¶ 31} Given the plain language of the words, we do not find any deficiency by defense counsel in failing to request further clarification in response to the question. There is no indication the result of the proceedings would have been any different. *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 32} Upon review, we do not find that the trial court misled the jury or that defense counsel was ineffective.

{¶ 33} Assignments of Error III and IV are denied.

{¶ 34} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Baldwin, J. concur.


EEW/db