[Cite as *State v. Rodriguez*, 2024-Ohio-5832.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240159 |
| | | TRIAL NO. C/23/TRD/27801 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| HEIDY ROSADO RODRIGUEZ, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: December 13, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} While riding her electric scooter on a roadway alongside traffic, officers followed defendant-appellant Heidy Rosado Rodriguez and eventually pulled her over, claiming that she impeded and blocked the flow of traffic in contravention of Ohio's slow speed law. Ms. Rodriguez took the issue to a bench trial, where the trial court ultimately convicted her and levied a $50 fine. She now appeals to this court, asserting three assignments of error, essentially challenging the trial court's evidentiary determinations, its ultimate judgment, and raising cumulative error arguments from her trial. After reviewing the record, we agree with Ms. Rodriguez that insufficient evidence supported her conviction, reverse the trial court's judgment, and discharge her from further prosecution on this charge.

I.

{¶2} On a crisp October evening, at around 5 p.m., Ms. Rodriguez zipped along North Bend Road with her daughter on electric scooters. As they approached a red stop light, the car in front of them stopped, they slowed down and stopped, and a Green Township police cruiser pulled in behind them. Once the light turned green, the pair began traveling, and the officers followed them. Ms. Rodriguez hugged the right-hand curb (while avoiding drains and other irregularities), although her daughter strayed closer to the middle of the lane. At that point in the road, there was one lane going in each direction and a turn lane in the center of the road. The speed limit was 35 m.p.h.

{¶3} The officers' dash-cam video captured the entire affair, and no one disputes its authenticity or accuracy. Almost immediately after the light turned green, the officers activated their vehicle's lights and steered around Ms. Rodriguez to the left (they estimated that she was traveling at about ten to 15 m.p.h.). Riding alongside her

for a few moments, the officers yelled at her to try to get her attention. It's unclear whether she didn't immediately hear them or did not fully understand them (she is a native Spanish speaker). In the midst of all of this, Ms. Rodriguez's daughter remained ahead of the cruiser, seemingly oblivious to it.

{¶4} After a few more seconds, Ms. Rodriguez and her daughter eventually pulled into the turn lane and stopped, with the police cruiser behind them, where they began speaking with the police (a conversation that proceeded in fits and starts, given the language barrier).

{¶5} Ms. Rodriguez was ultimately charged with a slow-speed violation under R.C. 4511.22(A). Believing that she had the right to drive the scooter on the road, Ms. Rodriguez took the issue to trial on her own behalf. On the day of trial, a public defender volunteered to represent her, but the trial court refused to appoint him on the case. That rendered the trial much more complicated, with a translator serving as an intermediary between Ms. Rodriguez, the court, and the prosecutor. Throughout the trial, Ms. Rodriguez sought to argue that she couldn't be convicted because she had the right to ride her scooter on the road, just like a bicycle. The court was not persuaded. After a six-hour bench trial, the court found her guilty of a slow-speed traffic violation.

{¶6} Ms. Rodriguez now appeals to this court, asserting three assignments of error. She argues that the trial court erred when it failed to consider the plain language of the statute and continuously excluded relevant evidence, the trial court's judgment was against the manifest weight of the evidence, and the cumulative effect of the trial court's error deprived her of a fair trial.

II.

{¶7} We begin with Ms. Rodriguez's second assignment of error, which we

3

find dispositive. Although she labels it as a manifest weight of the evidence challenge, she actually presents a sufficiency of the evidence argument in her brief. Therefore, we will construe this as both weight and sufficiency challenges, and proceed to evaluate the sufficiency of the evidence supporting the trial court's judgment. *See City of Cincinnati v. Twang, LCC*, 2021-Ohio-4387, ¶ 13 (1st Dist.) (recasting appellant's assignment of error to reflect the essence of its argument, as opposed to the label used in its brief).

**{¶8}** In determining whether a conviction was supported by sufficient evidence, appellate courts "'assess whether, construing the evidence in a light most favorable to the state, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'" *State v. Williams*, 2020-Ohio-5245, ¶ 15 (1st Dist.), quoting *State v. Brown*, 2019-Ohio-3349, ¶ 11 (1st Dist.). We review such issues de novo. *Id.*, citing *State v. Ellison*, 2008-Ohio-5282, ¶ 9 (1st Dist.). Ms. Rodriguez was charged under R.C. 4511.22(A), which provides that that "[n]o person shall stop or operate a vehicle . . . at such an unreasonably slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with law." Therefore, in order to convict Ms. Rodriguez, the State needed to present sufficient evidence that she (1) was traveling at an unreasonably slow speed, and (2) impeded or blocked the normal and reasonable movement of traffic.

**{¶9}** As an initial matter, we perceive a threshold problem that was not raised in the appellate briefs (but was raised by Ms. Rodriguez, albeit inartfully, at trial). The statute that the State charged Ms. Rodriguez under specifically applies to persons operating *vehicles*, not electric scooters, which are categorized as "low-speed micromobility devices" by the General Assembly. *See* R.C. 4511.01(WWW). When the

statute defines "vehicle," it specifically *excludes* low-speed micromobility devices from that definition. *See* R.C. 4511.01(A) ("'[V]ehicle' does not include any motorized wheelchair, any electric personal assistive mobility device, any low-speed micromobility device . . . ."). Based on that definition, a scooter cannot satisfy the definition of "vehicle" under the statute or properly support a conviction under R.C. 4511.22(A). But since that argument was not presented to us, we set it aside for the moment and consider the evidence at trial.

{¶10} Based on the evidence in the record, particularly the dash-cam video, we do not see sufficient evidence that established that Ms. Rodriguez "impede[d] or block[ed] the normal and reasonable movement of traffic." At trial, the officers tended to conflate the actions of Ms. Rodriguez with those of her daughter, in terms of their whereabouts in the lane. But this case only concerns Ms. Rodriguez's actions. The undisputed evidence shows that Ms. Rodriguez drove her scooter as close as reasonably practicable under the circumstances to the right-hand edge of the lane. Given her location, and the center-turn lane bisecting the lanes of traffic, her positioning by necessity could not have impeded or blocked the flow of traffic at that particular location. Nor do we need to speculate on that point, because the police cruiser proved the matter. It pulled alongside Ms. Rodriguez, and presumably could've just kept going (as long as her daughter wasn't in the way). Ms. Rodriguez was certainly going at a low rate of speed (most scooters can't exceed 15-20 m.p.h.), but she didn't impede anything. Even construing the evidence in a light most favorable to the state, any vehicle could have easily, and safely, passed her at that point on the road.

{¶11} Therefore, we sustain Ms. Rodriguez's second assignment of error, which renders moot her first and third assignments of error.

* * *

{¶12} Based on the foregoing reasons, we sustain Ms. Rodriguez's second assignment of error and find that her conviction was not supported by sufficient evidence. We reverse the judgment of the trial court and discharge Ms. Rodriguez from further prosecution on this charge.

Judgment reversed and appellant discharged.

ZAYAS, P.J., and WINKLER, J., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.